IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISCTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WERFEL CHIROPRACTIC, PC & HOWARD WERFEL, | : : : : : : : : : : : : : : : : : : : | Civil Action No.: 2:17-cv-00878-DSC |
| Plaintiffs, | | **The Honorable David S. Cercone** |
| v. | | |
| NUTRIMOST, LLC., NUTRIMOST DOCTORS, LLC., RAYMOND WISNIEWSKI, 201 MARKETING & MEDIA, LLC., ROGER TASHJIAN, CHECK APPOINTMENTS, INC. & CRASH 31, LLC. | | |
| Defendants. | | JURY TRIAL DEMANDED |

## **AMENDED COMPLAINT**

COMES NOW Plaintiffs, WERFEL CHIROPRACTIC, PC., and HOWARD WERFEL, by and through their counsel, SCOTT LEVENSON, ESQ., and files this Amended Complaint against the herein named Defendants, and in support hereof avers as follows:

### I.   **PRELIMINARY STATEMENT**

1.  This Complaint is filed under the New York Franchise Sales Act (NY General Business Law § 680, et. seq.), New York Deceptive Acts and Practices Law (NY General Business Law § 349), The New Jersey RICO Statute (N.J.S.A. 2C:41-2(c)), the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et. seq.), and the Federal Anti-Trust statutes (15 U.S.C. § 1,2; & 15 U.S.C. § 14) as well as additional pendant claims arising from Defendants' tortious conspiracy to destroy the Plaintiffs' business.

1

## II. JURISDICTION

2. This court has subject matter jurisdiction under over Plaintiff's anti-trust claims pursuant to 28 U.S.C. § 1331.

3. This court also has jurisdiction over the parties pursuant to 28 USC § 1332 because the citizenship of Plaintiff and Defendants are diverse and the amount in controversy exceeds $75,000.00.

4. Pursuant to 28 USC § 1367, this Court also has supplemental jurisdiction over the Plaintiff's state law claims.

## III. VENUE

5. Venue is properly laid in this judicial district pursuant to 28 USC sec. 1391(b)(2).

## IV. THE PARTIES

6. Plaintiff, Howard Werfel, is an individual domiciled at 7 Hampton Road, Airmont, NY 10901 ("Werfel").

7. Plaintiff, Werfel Chiropractic PC, is a professional corporation organized and existing under and by virtue of the law of the State of New York, with a principal place of business at 40 Lafayette Avenue, Suffern, NY 10901 ("Werfel Chiropractic").

8. Defendant, Nutrimost, LLC., is a Pennsylvania limited liability company with its principal place of business at located 135 Bella Vista CT., Murraysville, PA, 15668. Upon information and belief, Defendant Nutrimost, LLC., also maintains an office at 10483 Frankstown Road, Pittsburgh, PA 15235 ("Nutrimost").

9. Defendant, Nutrimost Doctors, LLC., is a Pennsylvania limited liability company with its principal place of business at located 135 Bella Vista CT., Murraysville, PA, 15668. Upon

information and belief, Defendant Nutrimost, LLC., also maintains an office at 10483 Frankstown Road, Pittsburgh, PA 15235 ("Nutrimost Doctors").

10. Defendant, Raymond Wisniewski, is an individual residing at 35 Bella Vista CT., Murraysville, PA, 15668. Upon information and belief, Defendant, Raymond Wisneiwski is the sole member of Nutrimost and Nutrimost Doctors, and also maintains an office at 10483 Frankstown Road, Pittsburgh, PA 15235 ("Wisniewski"). (Defendants, Nutrimost, Nutrimost Doctors, and Wisniewski are hereinafter collectively referred to as the "Nutrimost Defendants").

11. Defendant, 201 Marketing and Media, LLC., is a New Jersey limited liability company which maintains its principal place of business at 70 Kinderkamack Avenue, Emerson, NJ 07630 ("201 Marketing").

12. Defendant, Roger Tashjian, is an individual residing at 935 Woodland Avenue, Oradell, NJ 07649 ("Tashjian").

13. Upon information and belief, Defendant CheckAppointments, is a North Carolina corporation with its principal place of business at 222 S. Church Street, Charlotte, North Carolina 28202 ("CheckAppointments").

14. Defendant Crash 31, is an Indiana limited liability company, maintaining its principal place of business at 2036 Broadway, Suite 202, Fort Wayne, Indiana 46802 ("Crash 31").

## V. FACTS COMMON TO ALL COUNTS

15. The Nutrimost Defendants are franchisors that market, offer, and sell franchises within the meaning of the New York Franchise Sales Act, General Business Law, section 680, et. seq. to the consuming public at large, including to the residents of the State of New York, through various forms of advertising, including web and print media, and are subject to the mandates of federal and state law.

16. Pursuant to the Federal Trade commission Rule, 16 C.F.R. section 436 (FTC Rule 436), as amended, a franchisor is obligated to provide each prospective franchisee with an offering prospectus, or Franchise Disclosure Document, prior to entering into a franchise agreement.

17. Franchisors, such as Defendants, that fail to properly register a franchise in accordance with the New York Franchise Sales Act are potentially liable for both civil and criminal penalties in the State of New York. Moreover, any and all directors, principal executive officers, and controlling persons of the franchise seller are also exposed to joint and several liability, to the same extent as the franchisor pursuant to General Business Law section 691(3).

18. In or about the month of April, 2013, Plaintiffs and Defendants entered into a franchise agreement wherein Plaintiffs were granted the right to sell the "Nutrimost" Weight Loss system consisting of a custom made diet and supplement plan. Plaintiffs paid Defendants an upfront Franchise Fee of approximately $2,000.00 and ongoing monthly Franchise Fee of $399.00 per month. Plaintiff's were promised an exclusive territory consisting of several zip codes in the Rockland County, New York geographic area.

19. In or about the month of October, 2013, Plaintiffs and Defendants entered into another Franchise Agreement which expanded the scope of Plaintiff's exclusive territory. Plaintiffs paid an upfront Franchise Fee of approximately $17,000.00 for the new franchise agreement, and ongoing monthly Franchise Fees in the approximate sum of $6,750.00 per month.

20. At no point were Plaintiff's provided with a registered Franchise Disclosure Document as required by New York Law.

21. In an effort to market and promote the sale of their Program, the Plaintiffs hired defendants, 201 Marketing and Tashjian, to develop a marketing plan which included without limitation, a website, an "800 number," and media buying and ad placement services.

22. While under engagement and being compensated by Plaintiffs, defendants, 201 Marketing and Tashjian, developed the branding concept of "855killfat."

23. As an agent of the Plaintiffs, and at their express direction, defendants, 201 Marketing and Tashjian, purchased the domain name "855killfat.com" and the toll free number "855killfat."

24. Both the domain name "855killfat.com" and the toll free number ""855killfat" were paid for by the Plaintiffs.

25. Subsequent to the purchase of the above referenced domain name and toll free number, Plaintiff, Werfel, introduced defendants, Tashjian and 201 Marketing, to the Nutrimost Defendants.

26. Tashjian and 201 Marketing then became the exclusive marketer for the Nutrimost Defendants and their approximate 160 franchisees.

27. Plaintiffs spent hundreds of thousands of dollars on television, radio, and web based marketing, advertising and promoting the 855killfat.com website and the 855killfat toll free number.

28. The single focus of Plaintiff's marketing plan was to direct web traffic and phone calls to Plaintiff's 855killfat.com website and 855killfat toll free number.

29. Defendant, CheckAppointments, was hired by Plaintiffs to maintain a calendar of all appointments made through the 855killfat.com website and 855killfat toll free number.

30. Upon information and belief, defendant, CheckAppointments, also worked for the Nutrimost Defendants.

31. Defendants, 201 Marketing, Tashjian, and CheckAppointments all had large accounts with the Nutrimost Defendants and derived a substantial amount of the their revenue from the Nutrimost Defendants.

32.     Accordingly, the Nutrimost Defendants wielded a great deal of influence over said defendants.

33.     On or about the month of March, 2015, the Nutrimost Defendants terminated Plaintiff's franchise without good cause.

34.     Immediately thereafter, the Nutrimost Defendants embarked upon a campaign to destroy the Plaintiffs business.

35.     As part and parcel of their malicious plan to destroy Plaintiff's business, the Nutrimost Defendants colluded and conspired with Tashjian, 201 Marketing, and CheckAppointments to misappropriate and "steal" Plaintiff's 855killfat.com website, and its 855killfat toll free number, along with all leads, appointments, and potential customers that were being directed to the website and toll free number as a result of Plaintiff's massive advertising campaign.

36.     Defendants, Tashjian and 201 Marketing, wrongfully, maliciously, and tortiously, diverted both the 855killfact.com website and the 855killfat toll free number to the Nutrimost Defendants, such that all web traffic and toll free calls went to the Nutrimost Defendant's and/or their affiliates.

37.     Defendants, Tashjian and 201 Marketing, knowingly and willfully committed these actions even though the domain name and toll free number were paid for by the Plaintiffs.

38.     In conspiracy with the Nutrimost Defendants, defendant, CheckAppointments likewise diverted appointments, prospects, and advertising leads to the Nutrimost Defendants.

39.     Upon information and belief, Defendant, Crash 31, was also an active participant in the conspiracy to misappropriate Plaintiff's 855killfat website. Upon information and belief, Crash 31 worked in concert with Tashjian and 201 Marketing to "hijack" Plaintiffs website, and then

provided for the hosting of the same with full knowledge that the website had been "stolen" from the Plaintiffs.

40. As required by the franchise agreement between the Nutrimost Defendants and the Plaintiffs, the Nutrimost Defendants were granted access to the Plaintiff's bank account in order that they may automatically debit franchisee fees, and charges for other purchases, such as dietary supplements and advertising materials.

41. Upon information and belief, upon obtaining the bank account access, the Nutrimost Defendants continuously and systematically fraudulently debited Plaintiff's bank account when no goods or services were supplied, and no authorization was granted for such charges.

42. When Plaintiff's made inquiries relative to the validity of the bank account debits, the Nutrimost Defendants and/or their agents or employees were either non-responsive or would "brush off" inquiries from the Plaintiffs.

43. Since the Plaintiff's persisted in questioning the validity of the subject bank account debits, the Nutrimost Defendants unlawfully terminated their franchise.

44. Upon the termination of Plaintiff's franchise, the Nutrimost Defendants embarked on a campaign to use their superior market power to force the Plaintiffs out of business, restrain trade, and eliminate competition by engaging in the following activities: (a) saturating Plaintiff's local market with Nutrimost locations, depleting any available market share; and (b) using its superior market power to obtain advertising "exclusives" from local media outlets which barred Plaintiff's from advertising.

45. By way of example, and not by limitation, Plaintiffs had been advertising on certain radio stations for a year or more when the Nutrimost Defendants approached those stations and

offered to pay an above market premium for advertising on the express condition that those stations no longer run advertising for the Plaintiffs.

46. The anti-competitive actions by the Defendants are in violation of state and federal anti-trust laws.

### COUNT I
### VIOLATIONS OF THE NEW YORK FRANCHISE SALES ACT (GBL sec. 680, et. seq., hereinafter the "Franchise Sales Act")
### (Against the Nutrimost Defendants)

47. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

48. It is unlawful to offer or sell a franchise in the State of New York unless the franchise has been registered with the New York State Attorney General's Office.

49. The offer and sale of the above franchise to Plaintiffs by Defendants constituted an offer and sale of a franchise within the meaning of the Franchise Sales Act.

50. The Defendants, are, and at all relevant times, were required by the Franchise Sales Act to provide each and every prospective franchisee residing or operating a Nutrimost franchise in New York an accurate registered Franchise Disclosure Document.

51. Defendants violated the express requirements of the Franchise Sales Act and applicable regulations, in that Defendants: (i) never registered a Franchise Disclosure Document with the New York Attorney General's Office; and (ii) never provided a registered Franchise Disclosure Document to the plaintiff's prior to entering into a franchise agreement with them.

52. Defendant, Raymond Wisniewski, personally participated in and materially aided the above violations by inducing the Plaintiffs to enter into the subject franchise agreements with full knowledge that the Defendants had neither previously registered a Franchise Disclosure Document, nor provided the same to the plaintiffs.

53.     Upon information and belief, Defendants have acknowledged and admitted their violations of the Franchise Sales Act by, subsequent to their sale of an illegal franchise to plaintiffs, preparing a Franchise Disclosure Document and using the same to offer franchises in other states.

54.     Upon information and belief, Defendants have, subsequent to their sale of an illegal franchise to Plaintiffs, submitted an application for registration with the New York State Attorney General's Office, but as of the filing of this action, it is unknown if the Nutrimost Defendants have completed the registration process.

55.     Inasmuch as Defendants violations of the Franchise Act were willful and material as set forth above, Plaintiffs are entitled to treble damages, attorneys' fees, and rescission of the illegal Franchise Agreements, in addition to an award of compensatory damages.

## COUNT II
## UNLAWFUL TERMINATION OF FRANCHISE
### (Against the Nutrimost Defendants)

56.     Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this complaint as if fully set forth at length herein.

57.     Under New York law, a franchisor may not terminate a franchise except for good cause.

58.     Defendants unlawfully terminated Plaintiffs franchise agreement without good cause and without notice in violation of New York law.

59.     Moreover, Defendants have unlawfully refused to ship, deliver, and fill orders placed by Plaintiff for product.  Such refusal amounts to an unlawful termination of Plaintiffs' franchise without good cause and without notice.

60. The termination of the Franchise Agreement and the refusal to supply Plaintiffs with necessary product were directly and personally ordered by defendant, Raymond Wisniewski, and constitute willful and material violations of the Franchise Sales Act.

61. Plaintiffs have sustained severe financial losses and damages as a result of Defendant's unlawful termination of the Franchise Agreement.

## COUNT III

### DECEPTIVE ACTS AND PRACTICES (GBL sec. 349)
### (Against the Nutrimost Defendants)

62. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if the same were fully set forth at length herein.

63. Defendants owed Plaintiff a duty to not engage in illegal, fraudulent, and/or deceptive acts and practices prohibited by General Business Law section 349. The above actions of Defendants constitute of a violation of GBL sec. 349, including but not limited to violations of the Franchise Sales Act and Federal Trade Commission Rule 436.

64. Said violations include offering and selling, in direct contravention of the Franchise Sales Act, an unregistered franchise in the State of New York, and further failing and/or refusing to provide Plaintiffs with the statutorily required disclosure document. The aforesaid actions were undertaken with the express knowledge, and at the express direction of Defendant, Raymond Wisniewsky, and therefore constitute willful and knowing violations of GBL sec. 349.

65. As a proximate result of the foregoing deceptive acts and practices by Defendants, Plaintiff incurred substantial damages, and is therefore entitled to an award of compensatory and treble damages, as well as rescission of the illegal Franchise Agreement, and reasonable attorneys' fees.

## COUNT IV
### Racketeering in violation of N.J.S.A. 2C:41-2(c)
### (Against all Defendants)

66. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

67. The Defendants are persons as that term is used in N.J.S.A. 2C:41-1(b).

68. The Defendants comprise an Enterprise as that terms is defined in N.J.S.A. 2C:41-1(c).

69. The Enterprise engaged in or its activities affected trade or commerce as set forth above.

70. The Defendants participated in the conduct of the Enterprise.

71. The Enterprise engaged in fraudulent practices and employed wire fraud to "steal" and otherwise misappropriate Plaintiff's 855killfact.com website, its 855killfat toll free number, and all the sales leads and potential customers that were generated from the hundreds of thousands of dollars spent in various advertising campaigns that were "hijacked" by the Defendants.

72. The Defendants, jointly and severally, engaged in the above described activities which affected trade and commerce, and unlawfully and willfully combined, conspired, confederated, and agreed with each other to violate N.J.S.A. 2C:41-2(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the Enterprise, through a pattern of racketeering activity, all in violation of N.J.S.A. 2C:41-2(d).

73. The Plaintiffs suffered significant pecuniary loss and damages by virtue of the Defendants racketeering enterprise.

## COUNT V
### Tortious Interference with Prospective Economic Advantage
### (Against All Defendants)

74. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

75. Plaintiffs had business relationships and prospective business relationships with many third-parties, including but not limited to, all the potential customers driven to its 855killfat.com website and 855killfat toll free number.

76. The Defendants were well aware of Plaintiff's actual and potential contractual and business relationships with these third-parties.

77. Defendants intentionally and maliciously interfered with Plaintiff's relationships with these third-parties by employing wrongful means that included the unlawful "hijacking" of the 855killfat website and 855killfat toll free number and all the leads, customers, and appointments that were to be derived therefrom after Plaintiffs spent hundreds of thousands of dollars advertising and promoting the same. In the same month that they wrongfully transferred the 855killfat.com website and 855killfat toll free number to the Nutrimost Defendants, defendants, Tashian and 201 Marketing, as agents for the Plaintiff, tripled the Plaintiff's expenditure for radio advertising, knowing full well that all calls and web traffic from such advertising was diverted to the Nutrimost Defendants.

78. Plaintiffs had a reasonable expectation that each of the aforementioned business relationships would result in Plaintiff obtaining the benefits of these business opportunities. However, Defendants' wrongful actions directly caused Plaintiff to lose the business relationships described herein, to Plaintiffs economic detriment. Each of the Defendants was aware of, and intended to cause, this detrimental impact on Plaintiff's prospective and actual business relationships.

79. As a direct and proximate cause of defendants' intentional interference with Plaintiffs actual and prospective contractual relationships with third-parties, Plaintiffs' business

relationships were damaged, and Plaintiffs suffered resulting monetary damages in an amount to be determined at trial

## COUNT VI
## Civil Conspiracy
## (Against all Defendants)

80. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

81. Defendants conspired with each other, and acted in concert to commit unlawful acts, as set forth herein.  Each of the Defendants shared the same conspiratorial objective, which was to "hijack" Plaintiff's 855killfat.com website and 855killfat toll free number with the goal of harming Plaintiffs' business, and profiting from that harm by "stealing" Plaintiffs advertising leads and eliminating Plaintiffs as competitors. Each of the Defendants understood the objectives of the scheme, accepted them, and was an active and knowing participant in the scheme.

82. The Defendants' conspiratorial scheme was carried out by the commission of the wrongful and overt acts set forth above.

83. As a direct, proximate result of the operation and execution of the conspiracy, the Plaintiffs have been injured and suffered damages in an amount to be proven at trial.

## COUNT VII
## Consumer Fraud 56:8-1, et. seq.
## (Against all Defendants)

84. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

85. In their dealings with Plaintiffs, Defendants engaged in unconscionable commercial practices, deception, fraud, false pretense, false promises, misrepresentations, and/or the

13

knowing, concealment, suppression, or omission of material facts with intent that Plaintiff and others rely upon such concealment, suppression or omission, in connection with the promotion, solicitation, sale or advertisement of their services rendered to Plaintiffs.

86. Defendants further violated established public policy and were unscrupulous, unethical, oppressive and illegal in their conduct and dealings as set forth above. For purposes of this cause of action, the Defendants' conduct consisted of three elements: (1) unlawful conduct in violation of the New Jersey Consumer Fraud Act; (2) an ascertainable loss on the part of the Plaintiff which has occurred; and (3) a causal relationship between the Defendants' unlawful conduct and the Plaintiff's ascertainable loss.

87. As a direct and proximate result of the unconscionable and fraudulent practices perpetrated by the Defendants, Plaintiff and others have been injured in their business and property. By reason of the Defendants' misconduct and unfair practices, Plaintiff is entitled to actual damages, treble damages, and reasonable attorneys' fees.

**COUNT IX**
**Unjust Enrichment**
**(Against the Nutrimost Defendants)**

88. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

89. Due to the foregoing misconduct associated with the "hijacking" of Plaintiffs 855killfat.com website and 855kilfat toll free number, the Nutrimost Defendants have been unjustly enriched and all revenue collected by them that was derived from Plaintiffs advertising campaign should be disgorged and returned to Plaintiffs.

## COUNT X
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

90.     Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

91.     Defendants actions and omissions, as set forth above, breached the covenant of good faith and fair dealing implied in all contracts.

92.     Plaintiffs have suffered pecuniary loss and damages as a result of the Defendants breach of the implied covenant of good faith and fair dealing.

## COUNT XI
### Misappropriation of Trade Secrets
### (Against All Defendants)

93.     Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

94.     The 855killfat.com website and 855killfat toll free number, along with all advertising leads and potential customers resulting therefrom constitute trade secrets and confidential and proprietary information belonging exclusively to Plaintiffs.

95.     The Defendants have knowingly misappropriated and used Plaintiffs trade secrets and confidential and proprietary information in violation of Plaintiffs rights.

96.     As a result of the Defendants misappropriation of Plaintiff's trade secrets and confidential and proprietary information, Plaintiffs have been injured and are entitled to damages in an amount to be set forth at trial.

## COUNT XII
### Unfair Competition
### (Against All Defendants)

97. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

98. The misconduct of the Defendants described herein was undertaken in order to unlawfully compete against Plaintiffs through the misappropriation of Plaintiff's confidential and proprietary information and trade secrets, and the improper contact and solicitation of Plaintiff's customers.

99. The Defendants conduct as set forth above, represents transgressions of generally accepted standards of commercial competition, morality and law and, accordingly, violates common law and statutory principles relating to unfair competition.

100. All the aforesaid unlawful acts were undertaken by the Defendants willfully and maliciously, in bad faith, and for the purpose of injuring the Plaintiffs.

101. As a result of the Defendants unfair competition, Plaintiffs have been injured and are entitled to damages in an amount to be set forth at trial.

## COUNT XIII
### Conversion
### (Against All Defendants)

102. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

103. By engaging in the misconduct as described above, the Defendants have deprived Plaintiffs of their right to possession of the 855killfat.com website and 855killfat toll free number along with all the leads, customers, and revenue that was generated therefrom.

104. As a result of the forgoing, Plaintiffs have been injured and are entitled to the return of their property and damages in an amount to be set forth at trial.

## COUNT XIV
### Conversion
### (Against the Nutrimost Defendants)

105. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

106. By unlawfully debiting money from Plaintiff's bank account as stated above, the Nutrimost Defendants have deprived Plaintiffs of their right to possession of said funds.

107. As a result of the forgoing, Plaintiffs have been injured and are entitled to the return of their money and damages in an amount to be set forth at trial.

## COUNT XV
### Anti-Trust violations of the Sherman Act (15 U.S.C. §§ 1, 2) and Clayton Act (15 U.S.C. § 14)
### (Against the Nutrimost Defendants)

108. Plaintiffs repeat and re-allege each and every allegation contained in the previous paragraphs of this Complaint as if fully set forth at length herein.

109. The Nutrimost Defendants have engaged in an unlawful combination and conspiracy to restrain and monopolize interstate trade and commerce in violation of Sections 1 and 2 of the Sherman Act, and Sections 2(e) and 3 of the Clayton Act.

110. This unlawful combination, conspiracy, and attempt to monopolize and restrain trade has consisted of continuing agreements and concerts of action, including:

   a. saturating the Plaintiff's local market with Nutrimost locations, depleting any available market share;

   b. use its superior market power to obtain advertising "exclusives" from local media outlets such as radio and print media to bar Plaintiff's from advertising.

      c.      The Nutrimost Defendants have restrained, coerced, and prevented the Plaintiffs from reselling products or services outside of geographic territories prescribed by said defendants;

      d.      The Nutrimost Defendants have participated in a combination and conspiracy with certain of their franchisees in the State of New York, under which the participants have divided markets and allocated territories and agreed not to compete in the resale of the Nutrimost Defendants products in territories allocated to the other participants;

111. As stated above, the Nutrimost Defendants contacted radio stations that used to carry advertising for Plaintiffs and offered to pay those stations an above market premium for advertising on the express condition that those stations no longer run advertising for the Plaintiffs.

112. These acts were committed with the purpose and effect of preventing, reducing, and limiting competition in the market for diet and nutritional products and services, and constituted an attempt to monopolize, and a combination with others to monopolize, the market for these products and services.

113. As a direct result of the unlawful acts by the defendant as described above, the plaintiff has already suffered, and will continue to suffer, substantial damages.

WHEREFORE, the Plaintiffs request judgment against the Defendants awarding the following:

(a) compensatory damages;

(b) statutory treble damages;

(c) punitive damages;

(d) pre-judgment interest;

(e) post-judgment interest;

(f) reasonable attorney's fees and costs of suit;

(g) such other or further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs respectfully demand a trial by jury on all issues so triable.

Date: September 11, 2018                                  Respectfully Submitted,

_____
Scott Levenson, Esq.
Attorney for Plaintiffs
PA ID # 64466
slevensonesq@gmail.com